O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GANBAT AYURZANA,

    Petitioner,

v.

TODD M. LYONS, et al.,

    Respondents.

Case No. 5:26-cv-02238-KES

ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I.     INTRODUCTION

Ganbat Ayurzana ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  The parties have consented to the jurisdiction of the Magistrate Judge.  (Dkt. 7.)  The Petition is granted and Respondents are directed to immediately release him from custody.

## II.    PROCEDURAL HISTORY

Petitioner filed the present Petition on April 29, 2026.  (Dkt. 1.)  The Petition raises the following claims:

1

Ground 1: "Immediate release is warranted" because "Petitioner's continued detention" is "unnecessary," "arbitrary," and "excessive" because "[h]e has no criminal history, strong family ties, known residence, and a demonstrated history of compliance." (Pet. at 7 ¶¶ 59-66.) Alternatively, the Petition seeks "a custody hearing with the burden on the government." (Pet. at 9 ¶ 90.)

Ground 2: Respondents violated Petitioner's due process rights under the Fifth Amendment because he "was deprived of liberty without process," "the deprivation carries a high risk of error," and the "government failed to provide any procedural safeguards." (Pet. at 7-8 ¶¶ 67-74.) Respondents "fail[ed] to provide a meaningful custody determination prior to detention" and "failed to comply with [their] own regulations governing post-order detention and supervision, including 8 C.F.R. §§ 241.4 and 241.13." (Pet. at 6 ¶¶ 50-51.)

Ground 3: "This Court may issue all orders necessary to preserve jurisdiction and prevent transfer or actions frustrating meaningful review" under the All Writs Act. (Pet. at 8 ¶ 76.)

Respondents answered the Petition on May 6, 2026. ("Answer" at Dkt. 9.) They argue: (1) "the Petition is conclusory and vague" with "no specific factual allegations explaining why the arrest or detention is unlawful" (id. at 3); (2) "to the extent [the] Petition is raising a prolonged detention claim," he "does not qualify for Zadvydas[1] relief" because he "has not yet been detained for 90 days, much less the six months the Supreme Court held to be presumptively reasonable" (id. at 3-4), and "removal to Mongolia is significantly likely in the reasonably foreseeable future" (id. at 4); (3) "Petitioner has not shown that Respondent[s] violated regulations in exercising [their] discretion to revoke an OSUP [order of supervised release]" because "he submits no evidence proving that" and he "was only recently arrested and detained." (id. at 5-6); and (4) even if Petitioner had shown a

[1] Zadvydas v. Davis, 533 U.S. 678 (2001)

2

regulatory violation, release from custody is not an appropriate remedy (id. at 6). The Answer does not attach any exhibits or dispute any of the facts alleged in the Petition.

Petitioner filed a reply on May 8, 2026.  ("Reply" at Dkt. 10.)  He argues that "Respondents' Answer fundamentally mischaracterizes the nature of Petitioner's claims," because "this case is not about prolonged detention under Zadvydas" but rather "the government's sudden, warrantless, and process free deprivation of liberty of a fully compliant individual who had been living in the community."  (Id. at 2 ¶¶ 2-4.)  He argues, "Because [he] was detained without notice, without a hearing, and without any individualized custody determination, his continued detention violates the Fifth Amendment and warrants immediate release."  (Id. at 2 ¶ 6.)  Regarding the proper remedy, he argues that "a post-deprivation hearing does not cure the violation."  (Id. at 4.)

**III.    FACTUAL RECORD**

Petitioner is a native and citizen of Mongolia who presented himself for admission on March 8, 2023, at the Otay Mesa Port of Entry.  (Pet. at 4 ¶¶ 26-27.) On March 9, 2023, he was served with a notice to appear ("NTA") stating he was an arriving alien who had applied for admission and was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act ["INA"]."  (Pet. Ex. B / Dkt. 1 at 16 (the NTA).)

At some point, Petitioner was released from ICE custody under conditions that required him to check in regularly.  It is not clear whether he was released on bond, on an OSUP, or on his own recognizance.

Petitioner states that, since entering the United States, he has complied with all ICE reporting requirements and has never missed a check-in appointment.  (Pet. at 4 ¶¶ 28-29.)  He has no criminal history.  (Pet. at 4 ¶ 30.)  Petitioner is a husband and father of two children who depend on him emotionally and financially.  (Pet. at

2 ¶ 5; id. at 4 ¶¶ 31-33.)  Petitioner has diabetes, which requires ongoing medication and monitoring.  (Pet. at 2 ¶ 7.)

On December 19, 2025, an Immigration Judge ("IJ") ordered Petitioner removed.  (Pet. at 4 ¶ 34.)  Petitioner has moved to reopen his immigration case.  (Pet. at 5 ¶ 25.)

On April 24, 2026, ICE detained Petitioner at the airport while he was travelling for work.  (Pet. at 5 ¶ 36.)  Petitioner was detained without any notice, hearing, or individualized custody determination.  (Pet. at 5 ¶ 40.)  There is no evidence that he has been provided with a bond hearing either before or after his arrest.

**IV.   DISCUSSION**

To the extent Respondents argue that the Petition fails to allege sufficient facts or argument to demonstrate entitlement to relief, the Court disagrees.  The Petition argues:

47.   Petitioner was detained without any meaningful individualized custody determination.

48.   The Fifth Amendment requires notice and an opportunity to be heard before deprivation of liberty.  See Mathews v. Eldridge, 424 U.S. 319 (1976).

49.   ICE failed to provide any procedural safeguards prior to detaining Petitioner.

50.   Courts in this District have held that failure to provide a meaningful custody determination prior to detention violates due process.

(Pet. at 6 ¶¶ 47-52.)  Ground 2 of the Petition alleges a violation of "Fifth Amendment Due Process," and the Petition seeks immediate release from custody.  (Pet. at 7-9.)  These allegations are sufficient to state a claim for a violation of due process.

## A.    Legal Standard.

Under the Fifth Amendment Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

## B.    Analysis.

### 1.    Liberty Interest and Private Interest Affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). District courts in this circuit have routinely held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2,

5

2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases). Petitioner also has a substantial private interest in remaining out of custody because that "would allow him to care for and continue to provide for his family…." Domingo, 2025 WL 1940179, at *3, 2025 U.S. Dist. LEXIS 133824, at *6.

### 2. Risk of Erroneous Deprivation and Value of Additional Procedural Safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

Although neither party has provided specific facts about when or why Petitioner was released from custody while his removal case was pending, such a release means DHS necessarily determined that he was not a danger to the community or flight risk. See generally 8 U.S.C. § 1226(a) (providing that DHS may detain a noncitizen "pending a decision on whether the alien is to be removed from the United States" or may release them on bond or conditional parole); 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").

Respondent has never explained—either to Petitioner at the time of his arrest or in the present proceedings—what factual basis ICE has (if any) for changing

6

that determination.  There is no evidence, for example, that Petitioner violated the conditions of his release.  See, e.g., Larios v. Albarran, No. 25-cv-08799, 2025 WL 3043391, at *8, 2025 U.S. Dist. LEXIS 215501, at *24 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard."); Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *10 ("In complying with Respondents' conditions of Petitioner's release, Petitioner was then arrested without a meaningful opportunity to be heard or other procedural safeguard posing a high risk of error, with substantial harm."); Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *5 (C.D. Cal. Mar. 9, 2026) ("[T]he Court finds that there is significant risk of erroneous deprivation given that Petitioner did not receive a pre-detention hearing to determine whether there is valid basis for detention, and considering that Petitioner asserts he has complied with all terms of his parole and has no criminal record.").

A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence.  This is a significant procedural safeguard.

### 3. Countervailing Government Interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing.  Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov, 2026 WL 712827, at *2,  2026 U.S. Dist. LEXIS 49484, at *6 (same).  Moreover, in immigration court, custody hearings are routine and impose a minimal cost.  See Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *11; Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).  In the Court's

experience, DHS is routinely able to comply with court orders requiring such a hearing be held within seven days.

Accordingly, Petitioner is entitled to relief on Ground 2 of the Petition.

### 4. Appropriate Relief is Release, Not a Post-Deprivation Hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights.  Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless.  The government could always wait until a habeas petition is filed and then offer to hold a hearing.  Many courts have found that a post-detention bond hearing is insufficient in this context.  See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy).[2]  In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights.  See, e.g., Medrano-Rocha, 2026 WL 411355, at *7 (ordering petitioner's release and enjoining re-detention "without providing him a pre-detention hearing before a neutral decisionmaker where Respondent bears the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required"); Nieves, 2026 WL

---

[2] Aguilar v. Semaia, No. 26-cv-00023-MCS-SSC, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026)—a case in which the court found that a post-deprivation hearing was sufficient relief—is factually distinguishable because Aguilar "received significantly more process than in other cases in which courts have granted relief under Mathews," including appointment of counsel in his immigration case (due to incompetency) and a recent, post-arrest hearing before an IJ. Id. at *5.

931143, at *4 (granting release and enjoining re-detention "unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention"); Fernandez, 2026 WL 136229, at *7 (ordering release and enjoining re-detention "unless [Respondents] demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that there has been a material change in circumstances justifying Petitioner's re-detention").

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

9

## V.   CONCLUSION

IT IS THEREFORE ORDERED that:

1.   Ground 2 of the Petition is **granted**, and the other grounds in the Petition are dismissed as moot.[3]

2.   Respondents shall immediately release Petitioner from custody.  If Respondents have not released Petitioner **within three days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

3.   Respondents shall not re-detain Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that his physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

DATED:  May 13, 2026    _____
                        KAREN E. SCOTT
                        UNITED STATES MAGISTRATE JUDGE

---

[3] To the extent Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).

10